**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
FLORIDA HEALTH SCIENCES                   )
CENTER, INC., *d/b/a*                      )
TAMPA GENERAL HOSPITAL,                    )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )            Civil Action No. 14-0791 (ABJ)
                                          )
SECRETARY U. S. DEPARTMENT                )
OF HEALTH AND HUMAN SERVICES,             )
                                          )
            Defendant.                    )
_____)

**MEMORANDUM OPINION**

Plaintiff Florida Health Sciences Center, Inc., also known as Tampa General Hospital, has

sued the Secretary of the Department of Health and Human Services to challenge the agency's

calculation of the amount the hospital will receive under the Medicare program for uncompensated

care for fiscal year 2014.  The Medicare statute requires this payment to be calculated using a

number of factors, including "the amount of uncompensated care . . . for a period selected by the

Secretary (as estimated by the Secretary, based on appropriate data . . . )."  42 U.S.C.

§ 1395ww(r)(2)(C)(i).  Tampa General claims that the Secretary used inappropriate data when she

selected hospital cost data updated in March 2013 instead of data updated in April 2013 in

calculating these payments, and it maintains that this violated the Medicare statute and the

Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA").  The Secretary moved to dismiss

because, among other reasons, the statute precludes review of "[a]ny estimate of the Secretary for

purposes of determining the factors" used to calculate the payment and "[a]ny period selected by

the Secretary" for those purposes.  42 U.S.C. § 1395ww(r)(3).  Because the Court finds that

plaintiff's claims fall within the scope of the preclusion provision, the Court will grant the motion to dismiss.

## BACKGROUND

### I.     Statutory Framework

The federal Medicare program was established by Title XVIII of the Social Security Act of 1935 to provide health insurance to the elderly and disabled.  *Amgen, Inc. v. Smith*, 357 F.3d 103, 105 (D.C. Cir. 2004).  The Department of Health and Human Services ("HHS") administers Medicare.  *See* 42 U.S.C. §§ 1395h, 1395u.

Part A of the Medicare program provides insurance coverage for hospital care, home health care, and hospice services.  *Amgen*, 357 F.3d at 105, citing 42 U.S.C. § 1395c.  Hospitals are paid for inpatient services under the Inpatient Prospective Payment System, and they receive a fixed, predetermined amount based on each patient's category of illness.  *See* 42 U.S.C. § 1395ww(d).

Hospitals that serve "a significantly disproportionate number of low-income patients" receive additional payments under 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).  A hospital that receives this payment is called a "disproportionate share hospital," and the payment is called the "DSH adjustment."

The amount hospitals receive is based in part on annual cost reports that are submitted to a Medicare contractor at the end of each cost reporting period.  *See* 42 U.S.C. § 1395h.  The agency maintains the data in the Hospital Cost Report Information System ("HCRIS") database, and hospitals periodically update their cost reports in the database as new information becomes available.  *See* Provider Reimbursement Manual (Part I), § 2931.2; *see also* Medicare Financial Management Manual, ch. 8, § 10.4 (requiring contractors to timely update the database).  As a result, the database may contain a series of data sets for any hospital's costs for a single period. This case concerns the use of this data for the calculation of the DSH adjustment.

### A.      The Disproportionate Share Hospital Adjustment

The DSH adjustment used to be a retrospective payment based on a hospital's actual patient data.  But in 2010, Congress established a new procedure as part of the Patient Protection and Affordable Care Act ("ACA").  Pub. L. No. 111-148, *as amended by* Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111–152.  Now, the adjustment is a combination of the traditional retrospective payment added to a new prospective payment, based in part on the agency's estimate of each hospital's amount of uncompensated care.

### 1.      The Traditional DSH Adjustment

Before the ACA, a hospital's DSH adjustment was calculated by adding two fractions:  the hospital's Medicare fraction and its Medicaid fraction.  The Medicare fraction reflects the number of inpatient days a hospital experienced for patients entitled to both Medicare Part A and Supplemental Security Income ("SSI") benefits.  42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  The Medicaid fraction reflects the number of inpatient days a hospital experienced for patients eligible for state Medicaid assistance but not Medicare Part A.  42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).  A hospital's patient days are reported in the annual cost reports submitted to the agency and maintained in the HCRIS database.

### 2.      The Amended DSH Adjustment

The ACA revised the DSH adjustment as of fiscal year 2014.  The calculation is now based on a combination of the traditional DSH adjustment and a prospective estimate of each hospital's amount of uncompensated care.  First, the agency provides an "[e]mpirically justified" DSH payment pursuant to section 1395ww(r)(1), which is twenty-five percent of the traditional DSH payment described above.  42 U.S.C. §§ 1395ww(d)(5)(F)(i), 1395ww(r)(1).  Second, it provides an "additional payment" pursuant to section 1395ww(r)(2), which is each hospital's share of "75 percent of what otherwise would have been paid as Medicare DSH payments . . . after the amount

is reduced for changes in the percentage of individuals that are uninsured."  Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals and the Long-Term Care Hospital Prospective Payment System and Fiscal Year 2014 Rates, 78 Fed. Red. 50495, 50505 (Aug. 19, 2013) ("final rule").

The additional payment is calculated by multiplying three factors:  (1) an estimate of the remaining seventy-five percent of the DSH payments nationwide; (2) an estimate of the decline in the national uninsured rate for the fiscal year as compared to the prior fiscal year; and (3) each qualifying hospital's share of the total amount of uncompensated care.   42 U.S.C. §§ 1395ww(d)(5)(F)(i), 1395ww(r)(2).

This case concerns the third factor, which the statute defines as follows:

> (2)   Additional payment
>
> * * *
>
> (C) Factor three
>
>> A factor equal to the percent, for each subsection (d) hospital, that represents the quotient of –
>>
>> (i)     *the amount of uncompensated care for such hospital for a period selected by the Secretary (as estimated by the Secretary, based on appropriate data* (including, in the case where the Secretary determines that alternative data is available which is a better proxy for the costs of subsection (d) hospitals for treating the uninsured, the use of such alternative data)); and
>>
>> (ii)    the aggregate amount of uncompensated care for all subsection (d) hospitals that receive a payment under this subsection for such period (as so estimated, based on such data).

42 U.S.C. § 1395ww(r)(2)(C) (emphasis added).  In other words, the numerator in factor three is each hospital's "amount of uncompensated care . . . as estimated by the Secretary," and the denominator is the total amount of uncompensated care for all hospitals as estimated by the Secretary.

The statute also limits judicial and administrative review of the DSH adjustment as follows:

> (3) Limitations on review
>
> > There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of the following:
> >
> > (A)  Any estimate of the Secretary for purposes of determining the factors described in paragraph (2).
> >
> > (B)  Any period selected by the Secretary for such purposes.

42 U.S.C. § 1395ww(r)(3).  Since Congress clearly provided that "[t]here shall be no administrative or judicial review . . . of . . . [a]ny estimate of the Secretary" used for purposes of calculating the factors, including factor three, or "[a]ny period selected by the Secretary for such purposes," the question before the Court in this case at this juncture is whether the Court has subject matter jurisdiction to hear plaintiff's claims at all.

## B.  Regulatory Implementation of the Amended DSH Adjustment

To implement the amendments to the DSH adjustment, along with other changes to the Medicare statute, HHS issued a proposed rule in May 2013.  78 Fed. Reg. 27486 (May 10, 2013) ("proposed rule").  After receiving public comment, it issued the final rule in August 2013.  78 Fed. Reg. 50496.

With respect to factor three, the agency proposed and received comments on how to select the "appropriate data source" to calculate the additional payment.  *Id.* at 50635.  It ultimately

determined that at least for fiscal year 2014, it would use "alternative data" as permitted by statute[1] – the same Medicare and Medicaid fractions used to calculate the traditional DSH adjustment. 78 Fed. Reg. at 50636. "The numerator of Factor 3 would be the estimated Medicaid and Medicare SSI patient days for the individual hospital based on its most recent 2010/2011 Medicare cost report data." *Id.* at 50640. HHS chose the Medicare cost report data because it has been "historically publicly available, subject to audit, and used for payment purposes," and it proposed to use "the most recently available cost report" of each hospital's 2010/2011 data. *Id.* at 50638. Most commenters supported the agency's proposal to use the traditional DSH calculation as an interim measure for purposes of determining factor three. *Id.* at 50639.

In the proposed rule published in May 2013, the numerator for factor three was estimated using the December 2012 update in the HCRIS database of each hospital's 2010/2011 cost report. 78 Fed. Reg. at 27590. HHS stated that the final rule would use more recent data. *Id.* A number of hospitals, including plaintiff, submitted comments on the proposed rule concerning the accuracy of the data used for factor three. 78 Fed. Reg. at 50642. Some hospitals expressed concern that their Medicaid days would be understated by the December 2012 data or that these reports would be inaccurate. *Id.* Some asked the agency to provide a limited period after the final rule went into effect when hospitals could submit updated data. *Id.* Tampa General proposed "to submit data from its most recently amended, and now accepted, FY 2011, Medicare cost report," which had

---

1       HHS discussed the option of using data submitted by hospitals on Worksheet S-10, a relatively new data source used for specific payment purposes, but decided against it, at least for fiscal year 2014. 78 Fed. Reg. at 50635–39. The agency and most public commenters expressed concern about standardization and completeness of the data provided in this worksheet, and the agency cited "hospitals' relative lack of experience reporting all of the data elements on that worksheet." *Id.* at 50635. It stated that "Worksheet S-10 could ultimately serve as an appropriate source of more direct data regarding uncompensated care costs," *id.* at 50638, but decided at a minimum not to use it for fiscal year 2014. *Id.* at 50636, citing 42 U.S.C. § 1395ww(r)(2)(C)(i); *id.* at 50639.

been submitted to the agency in April 2013.  Administrative Record ("AR") at 28 n.1 (September 2013 letter from Tampa General to HHS restating its previous public comments on the proposed rule).  It pointed out that the April 2013 update data showed that the hospital had a total of 93,207 Medicaid days, compared to the 81,459 Medicaid days reported in the March 2013 data.  *Id.*

Ultimately, the final rule published in August 2013 used the March 2013 update of each hospital's 2010/2011 cost report as the source for the data that made up the estimate.  78 Fed. Reg. at 50642.  The agency reminded hospitals that "the data we are using are data that [hospitals] submit and attest are accurate on the Medicare cost report."  78 Fed. Reg. at 50642.  In response to requests for time for corrections, the agency stated that it did not agree "that providing hospitals additional time to submit data will necessarily improve the accuracy of the estimate used to calculate Factor 3 because such data could not be audited in a meaningful timeframe and still allow payments to be made in FY 2014."  78 Fed. Reg. at 50647.

In September 2013, Tampa General again asked HHS "to use the most recently available Medicaid days data" contained in the amended cost report submitted in April of 2014 when calculating the hospital's uncompensated care payment.  AR at 28.  The agency did not alter its approach, and in May 2014, Tampa General filed this lawsuit, challenging the final rule and the Secretary's calculation of its additional payment.  Compl. [Dkt. # 1].

## II.    Procedural History

Tampa General complains that the agency's use of the March 2013 update data to calculate its additional payment violates the APA and the Medicare Act.  Compl. ¶ 3.  It alleges that the Secretary used "obsolete data instead of the most recent data available" in determining factor three. *Id.* ¶ 1.  It asks the Court to declare the final rule's methodology for determining factor three to be invalid, to declare the hospital's DSH payment for fiscal year 2014 to be invalid, and to direct the Secretary to correct its calculation and pay the additional amount due.  *Id.* ¶ 46.

Defendant has moved to dismiss the case on the grounds that the statute precludes judicial review of plaintiff's claims, and that even if the claims are reviewable by the Court, they are premature and limited to those claims that were raised in the administrative process.  Def.'s Mot. to Dismiss [Dkt. # 9]; Def.'s Mem. in Supp. of Mot. to Dismiss [Dkt. # 9-1] ("Def.'s Supp. Mem."). Plaintiff opposes the motion and the parties have fully briefed it.  Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 11] ("Opp."); Def.'s Reply Mem. in Supp. of Mot. to Dismiss [Dkt. # 13] ("Reply").

The Court will grant defendant's motion to dismiss because the statute precludes judicial review of plaintiff's claims.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction.").  "Because subject-matter jurisdiction is an 'Art[icle] III as

well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1993); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

The Court's analysis begins with "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986), as well as the APA's "'basic presumption of judicial review'" of administrative actions. *Tex. Alliance for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012), quoting *Banzhaf v. Smith*, 737 F.2d 1167, 1169 (D.C. Cir. 1984) (en banc). This presumption may be overcome if "'there is persuasive reason to believe that such was the purpose of Congress.'" *Id.*, quoting *Banzhaf*, 737 F.2d at 1169. In analyzing whether a statute precludes judicial review, courts look for "'specific language or specific legislative history that is a reliable indicator of congressional intent.'" *Id.*, quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984). Here, in what appears to be a case of first impression, the Court finds that the preclusion provision in paragraph (3) contains specific language expressing Congress's intent to preclude judicial review of Tampa General's claims in this case.

I.      **The Language of the Statute Makes Clear that Congress Intended to Preclude Judicial Review of Tampa General's Claims**

The DSH adjustment provision states that "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . [a]ny estimate of the Secretary for purposes of determining the factors described in paragraph (2)" or of "[a]ny period selected by the Secretary for such purposes."   42 U.S.C. § 1395ww(r)(3).   The Secretary contends that this precludes the Court from reviewing Tampa General's claims because, in challenging the Secretary's decision to use the March 2013 update data, plaintiff seeks review of an "estimate" used by "the Secretary for purposes of determining the factors" used to calculate the additional payment and, more specifically, of a "period selected by the Secretary" for those purposes.   Def.'s Supp. Mem. at 13–22; Reply 3–17.   Tampa General argues that it challenges neither an "estimate" nor a "period" but rather the "Secretary's choice of 'appropriate data' or 'alternative data.'"   Opp. at 23.   But this exercise in semantics does not alter the essence of the hospital's claims in this case.

The gravamen of plaintiff's complaint is that the amount of uncompensated care calculated for Tampa General under the final rule is flawed because the Secretary based it on data updated as of March 2013 and not a subsequent update.   The Court lacks jurisdiction to hear this case under both subsection A and B of the limitations on review provision, because Tampa General is seeking judicial review of "the amount of uncompensated care . . . *as estimated by the Secretary*" for purposes of determining one of the factors used in calculating the additional payment, *see* 42 U.S.C. §§ 1395ww(r)(2)(C)(i) and 1395ww(r)(3)(A), and it is challenging a period selected by the Secretary for that purpose. *See* 42 U.S.C. § 1395ww(r)(3)(B).

**A.      Tampa General seeks review of a period selected by the Secretary for purposes of estimating its amount of uncompensated care, which is precluded by paragraph (3).**

The Court finds first that review of plaintiff's claims is precluded because the statute bars judicial review of "any period selected by the Secretary" for purposes of determining the factors used in calculating the additional payment.  42 U.S.C. § 1395ww(r)(3).

Plaintiff contends that the Secretary's choice of March 2013 data rather than April 2013 data to determine the numerator in factor three is not the selection of a "period" for purposes of the judicial review provision, but the selection of data upon which to base an estimate.  Opp. at 5 ("The methodology for determining Factor 3, the subject of this action, involves the selection of a period for estimating uncompensated care and the selection of a data source on which to base that estimate.").  According to plaintiff, the unreviewable "period selected by the Secretary" would be HHS's decision to use Medicare cost reports for the period of 2010/2011 to calculate the fiscal year 2014 payment.  *Id.* at 24.  Tampa General emphasizes that it is not challenging that choice; in its words, it objects to "the fixing of the payment amount . . . on the Secretary's determination to use obsolete, inappropriate data for 2010/2011."  *Id.*

But the statute prohibits review of "*[a]ny* period selected by the Secretary" for purposes of determining the three factors.  42 U.S.C. § 1395ww(r)(3) (emphasis added).  And, as the U.S. Court of Appeals for the D.C. Circuit stated simply:  "'Any,' after all, means any."  *Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010), citing *United States v. Gonzales,* 520 U.S. 1, 5 (1997) (explaining that "any" has an "expansive meaning" and holding that because "Congress did not add any language limiting the breadth of that word," the court could not impose a limit).  There can be no dispute that, "for purposes of determining" factor three, *see* 42 U.S.C. § 1395ww(r)(3), the Secretary elected to refer to cost reports updated as of March 2013 instead of those updated as of April 2013 – a different time period.  While Tampa General is correct that fiscal year 2010/2011

was a critical "period" for purposes of the calculation, and that the selection of updates as of March 2013 instead of April 2013 resulted in the utilization of a different data set, neither of those circumstances lifts this particular aspect of the Secretary's calculation out of the broadly worded limitation on judicial review. Because Congress used the expansive term "any" to modify "period" in the judicial review provision without "any language limiting the breadth of that word," *United States v. Gonzales*, 520 U.S. at 5, the Court cannot read the provision to apply only to the selection of the 2010/2011 cost period and not to the selection of the March 2013 update period, as plaintiff advocates. Accordingly, the Court holds that plaintiff has challenged the Secretary's selection of a period for purposes of determining factor three, and that its claims are therefore precluded by the statutory limitation on judicial review.

### B.     Tampa General seeks review of the Secretary's estimate of its amount of uncompensated care, which is also precluded by paragraph (3).

Even if the Secretary's decision to use March 2013 data instead of the April 2013 data does not involve the selection of a "period" within the meaning of the limitations provision, the Court finds that this case directly challenges an "estimate" of the Secretary, which Congress has insulated from judicial review.

The review provision states that "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . [a]ny estimate of the Secretary for purposes of determining the factors described in paragraph (2)." 42 U.S.C. § 1395ww(r)(3)(A). Under section 1395ww(r)(2), the additional payment to DSH hospitals is calculated based in part on "the amount of uncompensated care for such hospital for a period selected by the Secretary *(as estimated by the Secretary*, based on appropriate data . . . )." 42 U.S.C. § 1395ww(r)(2)(C)(i) (emphasis added).

Tampa General asserts that it is not challenging an estimate of the Secretary but rather the data upon which that estimate was based. *See* Opp. 21–24; *see also id.* at 22 (arguing that the word "estimate" in paragraph (3) "plainly refers to the particular values used to calculate the new DSH payment," which plaintiff maintains is distinct from the "Secretary's determination to base those estimates on inappropriate data").   But the statutory requirement that the Secretary use "appropriate data" when it estimates each hospital's "amount of uncompensated care" does not change the fact that the "amount of uncompensated care" is itself an estimate.   42 U.S.C. § 1395ww(r)(2)(C)(i) ("the amount of uncompensated care . . . *as estimated by the Secretary*"). What plaintiff challenges in this lawsuit is "the amount of uncompensated care for [Tampa General Hospital] . . . as estimated by the Secretary, based on appropriate data," *see id.*, which clearly falls within the ban on review of "any" estimate. *See id.* § 1395ww(r)(3)(A).   While plaintiff is correct that the statute mandates the Secretary to base the estimate on "appropriate data," there can be no review of the Secretary's application of this mandate because the judicial review clause expressly prohibits review of the overall estimate. *Id.*

Plaintiff attempts to plead its way around this statutory language by characterizing its claims as challenging the "substantive and procedural validity of the rule" rather than the estimate itself.   Opp. at 18.   But a review of the complaint and the relief sought reveals that plaintiff does not merely question the reasonableness of the final rule or the methodology used to determine the estimate needed for the numerator of factor three; it challenges the final estimate itself and the amount of the payment it will generate.   Compl. ¶¶ 2; 46(b)–(c) (alleging that the agency's use of the March 2013 update data resulted in a payment amount understated by approximately $3 million and requesting an order directing the Secretary to correct the hospital's DSH payment amount and to pay the addition amount due).

The case law is clear that efforts to characterize a claim as a review of an agency's procedure or methodology when the claim is, at bottom, an attack on an agency determination that is precluded from review will not forestall the application of the preclusion provision.  *See Am. Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 452 (7th Cir. 2002) (ruling that the plaintiff's "systemic challenge to the Secretary's interpretation of Congress's nondiscretionary instructions for establishing components of the physician fee schedule" was precluded from review because the statute precluded review of the components of the fee schedule); *Skagit Cnty. Pub. Hosp. Dist. No. 2 v. Shalala*, 80 F.3d 379, 386 (9th Cir. 1996) (holding that a challenge to the agency's "practice" in correcting wage data which went into the final reclassification decision was precluded because the statute precluded review of the reclassification decision); *Painter v. Shalala*, 97 F.3d 1351, 1356 (10th Cir. 1996) (holding that a challenge to "the manner in which the conversion factor is calculated by the Secretary" was barred because the statute precluded review of "the determination of conversion factors").  Here, plaintiff packages its protest as an action under the APA, but the finality provision plainly prohibits judicial review under Title 42 "or otherwise" of "any estimate of the Secretary."  For that reason, this case must be dismissed.

## II.     Other Preclusion Provisions in the Medicare Statute Do Not Alter the Court's Application of Paragraph (3)

Tampa General attempts to distinguish the preclusion provisions in the cases above as "involv[ing] blanket prohibitions on review of determinations that did not separately preclude review of only some methodological steps."  Opp. at 23, citing *Am. Soc'y of Cataract & Refractive Surgery*, 279 F.3d at 451, *Painter*, 97 F.3d at 1355, and *Am. Soc'y of Dermatology*, 962 F. Supp. at 146.  It also compares the judicial review provision in this case to others provisions that immunize a "broad range" of subjects from review.  Opp. at 18, citing *Tex. Alliance for Home*

*Care Servs. v. Sebelius*, 681 F.3d at 409 and *Carolina Med. Sales, Inc. v. Leavitt*, 559 F. Supp. 2d 69, 79 (D.D.C. 2008).  But the Court does not read the limitations provision here to be so limited.

Plaintiff also distinguishes the limitations provision applicable here from provisions that preclude review of individual agency determinations, but not of system-wide determinations.  Opp. at 26–27, citing *Universal Health Servs. of McAllen, Inc. v. Sullivan*, 770 F. Supp. 704 (D.D.C. 1991), and *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400 (D.C. Cir. 2005).  *Universal Health* involved adjustments to Medicare payments based on hospitals' geographic location and requests by hospitals to be reclassified from one geographic area to another for purposes of these adjustments.  770 F. Supp. at 708.  The plaintiff in that case challenged criteria the Secretary established to determine a hospital's "proximity" to an adjacent area in analyzing these reclassification requests, and the statute provided that the Secretary's decisions on these requests were "final and not . . . subject to judicial review."   *Id.* at 710, quoting 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II).   The court held that this provision only limited review of the reclassification decisions themselves, not guidelines used in making these decisions.  *Id.*

*Palisades General Hospital* involved the same provision and held that because the statute provided for review of the wage data used in making reclassification decisions, but precluded review of the final decisions, the district court could only "vacate the Secretary's decision rejecting the hospital's revised wage data and . . . remand for further action," but it could not "order either reclassification based upon those adjusted wage data or an adjusted reimbursement payment that would reflect such a reclassification."  426 F.3d at 403.

According to plaintiff, the limitations provision in paragraph (3) is unlike the limitations provisions that provide "blanket prohibitions on review" or prohibit review of individual but not system-wide agency determinations.  Opp. at 17–18, 23, 26–27.  It points out that the statute only

precludes review of "estimates" and "periods" but not "appropriate data." *Id.* at 16.  But that lifts the words "appropriate data" out of context – what is being challenged in this instance is the Secretary's calculation of the third factor used to determine the additional payment:  an estimate-based-on-appropriate-data.  *See* 42 U.S.C. § 1395ww(r)(2)(C)(i); *see also* Compl. ¶ 2 ("[T]he plaintiff Hospital has been competitively disadvantaged by an unreasonably predetermined DSH payment for FFY 2014 that is understated by approximately $3 million."); *id.* ¶ 46 ("plaintiff Hospital requests an Order . . . directing the Secretary to correct plaintiff Hospital's DSH payment amount . . . [and] directing the Secretary to pay plaintiff Hospital the additional amount due").

Tampa General also compares the finality provision here to judicial review provisions in other newly-created payment adjustments established by the ACA.  It directs the Court's attention to the judicial review provision governing payment adjustments for hospitals with excess readmissions.  Opp. at 17.  The provision bars review of:

> The methodology for determining the adjustment factor under paragraph (3), including excess readmissions ratio under paragraph (4)(C), aggregate payments for excess readmissions under paragraph (4)(A), and aggregate payments for all discharges under paragraph (4)(B), and applicable periods and applicable conditions under paragraph (5).

42 U.S.C. § 1395ww(q)(7)(B).  Plaintiff also points to the review provision for payment adjustments for hospitals satisfying certain performance standards.  Opp. at 18.  That provision precludes review of:

> The methodology used to determine the amount of the value-based incentive payment under paragraph (6) and the determination of such amount.

42 U.S.C. § 1395ww(o)(11)(B)(i).  And plaintiff compares the provision at issue here with the review provision for payment adjustments for hospitals with certain levels of hospital-acquired conditions.  Opp. at 17.  That provision prohibits review of:

(A) The criteria described in paragraph (2)(A).
(B) The specification of hospital acquired conditions under paragraph (3).
(C) The specification of the applicable period under paragraph (4).
(D) The provision of reports to applicable hospitals under paragraph (5) and the information made available to the public under paragraph (6).

42 U.S.C. § 1395ww(p)(7)(A)–(D).

Tampa General notes that the first provision expressly precludes review of the agency's "methodology," the second precludes review of the "methodology" and the determination of the amount, and the third precludes review of several, but not all, of the elements used in calculating the payment.  Opp. at 17.  It contrasts these judicial review provisions with the one at issue in this case, noting that where Congress intended to preclude review of "entire methodologies," as with the first two provisions above, it did so in broad terms.  *Id.* at 17–18.  By comparison, it argues, the limitations provision here is narrow and does not preclude review "of the Secretary's determination to use inappropriate data to calculate the new DSH payment."  Opp. at 17–18.

But the fact that Congress can speak more specifically and did so in other instances does not mean that the Court should not heed its proscriptions when it chooses to speak broadly.  If anything, the comparison indicates that Court should give considerable weight to the sweep of the finality provision here.  The Court's analysis must focus on the text of the provision in question and what it evinces about Congressional intent.[2]  *Block*, 467 U.S. at 349.  And the one principle that runs through all the cases cited by both parties is that the express terms of the review provision govern.

Congress did not specifically prohibit review of the methodology used to calculate the "estimated" amount of hospitals' uncompensated care in factor three, and it did not expressly bar

---

2      The Court notes that neither party provided any argument about the legislative history of the specific statutory provisions at issue in this case, and the Court's research uncovered none.

review of the "appropriate data" upon which the estimate would be based, but it did plainly and broadly prohibit any legal challenge to the estimate itself, by precluding administrative or judicial review "under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . [a]ny estimate" or "[a]ny period" used by the Secretary for purposes of determining the factors that make up the additional payment.  42 U.S.C. § 1395ww(r)(3)(A)–(B).  Because the Court finds that the complaint is, at its essence, a challenge to both an estimate and a period used by the Secretary for those very purposes, plaintiff's claims are not subject to judicial review.[3]

---

3       Tampa General asserts that the Secretary's own administrative review board concluded that "the Medicare statute guarantees the Hospital the right to administrative and judicial review of its challenge to the Secretary's rule adopted based on inappropriate data."  Opp. at 1; *see id.* at 12–15 (explaining that plaintiff is entitled to review under section 1395oo(a)(1)(A)(ii) of a final determination of the amount of payment it receives under the prospective payment system).  But paragraph (3) expressly precludes "administrative or judicial review under . . . *section 1395oo* of this title" of any estimate or any period used for determining the factors in calculating the additional payment.  42 U.S.C. § 1395ww(r)(3)(A)–(B) (emphasis added).  Because the Court has determined that plaintiff seeks review of both a period selected by the Secretary for this purpose and an estimate of the Secretary for this purpose, this argument fails also under the express language of paragraph (3).

        Tampa General also argues that the agency was required to use the "best available data" in calculating DSH payment amounts, that its refusal to use updated data and its decision to revise payments for some hospitals but not others were arbitrary and capricious, and that it violated the APA's notice and comment requirements.  Opp. at 19–21.  But these arguments go to the merits of plaintiff's claims, and the statute precludes review under the APA.  42 U.S.C. § 1395ww(r)(3) (precluding review "under section 1395ff of this title, section 1395oo of this title, *or otherwise*").

**CONCLUSION**

For the reasons set forth above, the Court will grant defendant's motion to dismiss [Dkt. # 9]. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 31, 2015